UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DEAN A. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil. No.: 5:20-cv-00310-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Dean A. Smith seeks judicial review of an administrative decision in which his claim for disability insurance benefits was denied.  Mr. Smith brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the ALJ considering this matter.  The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Smith's Motion for Summary Judgment [R. 15] and **GRANT** the Commissioner's [R. 17.]

**I**

**A**

Plaintiff Dean A. Smith initially filed an application for Title II disability insurance benefits on May 20, 2019, alleging disability beginning August 22, 2016.  [Transcript ("Tr.") 68-69.]  That claim was denied on June 13, 2019 and denied again upon reconsideration on July 22, 2019.  *Id.* at 67, 81.  Mr. Smith requested a hearing that was held on February 13, 2020.  *Id.* at 31-66.  At this hearing, Mr. Smith testified that he stopped working because he was missing too much time due to post-traumatic stress disorder symptoms, paranoia, and sleep disturbances.  *Id.* at 40.  ALJ Karen R. Jackson denied Mr. Smith's claim once more on March 25, 2020, after

concluding that Mr. Smith's substance abuse was material to his disability. *Id.* at 15-24. The Appeals Council denied review on May 14, 2020, rendering the ALJ's decision final. *Id.* at 1-6.

To evaluate a claim of disability for Title II disability insurance benefits claims, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520. First, if a claimant is doing substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Second, if a claimant does not have an impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities, or has not had a qualifying impairment for a period of at least twelve months, then he is not disabled. *See* 20 C.F.R. §§ 404.1509; 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, an ALJ considers a claimant's RFC and past relevant work, and if the claimant is still able to do his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if an ALJ assesses a claimant's RFC in conjunction with his age, education, and work experience and finds that the claimant cannot adjust to other work available in significant numbers in the national economy, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number

of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

If a claimant is found to be disabled and medical evidence of a substance use disorder also exists, then an ALJ must determine whether the claimant's substance use disorder is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535. In making this determination, an ALJ must evaluate the extent to which a claimant's mental and physical limitations would remain if the claimant stopped substance use. *See Id.* In assessing whether a claimant's substance use is a contributing factor material to a disability determination, courts "have allowed an ALJ to look at a claimant's periods of sobriety and compare those periods to times when the claimant was abusing substances" in making their determinations. *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 443 (6th Cir. 2011). If the remaining limitations would not be disabling, the substance use disorder is a contributing factor material to the determination of disability. *Id.* Moreover, an ALJ "must provide sufficient information in [her] determination or decision that explains the rationale supporting [her] determination of the materiality of [substance use] so that a subsequent reviewer considering all of the evidence in the case record is able to understand the basis for the materiality finding and the determination of whether the claimant is disabled." *See* Social Security Ruling 13-2p, 2013 WL 621536.

At step one, the ALJ determined that Mr. Smith had not engaged in substantial gainful activity since the alleged onset date. [Tr. 17.] At step two, the ALJ found that Mr. Smith's severe impairments consisted of major depressive disorder, PTSD, stress disorder, anxiety disorder, antisocial personality disorder, and alcohol use disorder. *Id.* At step three, the ALJ took into account Mr. Smith's substance use disorder, found that medical documentation

3

supporting the severe impairments detailed in step two was present, and found that Mr. Smith

had mild restrictions in understanding, remembering, and applying information, a moderate

limitation in interacting with others, a marked limitation in adapting or managing oneself, and a

marked limitation in concentration, persistence, or pace (collectively the "Paragraph B"

criteria).[1]  *Id.* at 18.  Consequently, Mr. Smith was found to be disabled under step three.  *Id.* at

18-19.  However, because the ALJ found at step two that Mr. Smith suffered from a substance

use disorder, she was next required to consider whether, in the absence of substance use, Mr.

Smith would still be found disabled.  20 C.F.R. § 404.1535.

   The ALJ ultimately found that if Mr. Smith ceased using alcohol, his remaining

limitations would cause more than a minimal impact on his ability to perform basic work

activities; however, he would not have an impairment or combinations of impairments that met

or equaled the severity of those impairments listed in § 12.04 of 20 C.F.R. Part 404, Subpart P,

Appendix 1.  [Tr. 20.]  Having concluded that Mr. Smith's substance use was a material factor

contributing to her initial finding of disability, the ALJ then reassessed step three and concluded

that Mr. Smith was not disabled.  *Id.*  At steps four and five, the ALJ found that if Mr. Smith

ceased alcohol use, he would have the RFC to perform a full range of work at all exertional

levels, with the following nonexertional limitations:

> Would require an object focused work environment in which contact with
> coworkers and supervisors is casual and occasional in a non-public work setting;
> would be limited to simple, routine work tasks; can maintain attention and
> concentration for simple tasks for 2-hour segments during an 8-hour workday;
> able to adapt to gradual changes in a routine work environment and would be
> limited to moderate noise intensity level.

---

[1] A "marked" limitation means that "your function in [a relevant area] independently,
appropriately, effectively, on a sustained basis is seriously limited.  A "moderate" limitation
means "your functioning in [a relevant area] independently, appropriately, effectively, and on a
sustained basis is fair.  [R. 11-1 at 25; 20 C.F.R [Sec] 404, Subpart P, App'x 1.]

*Id.* at 21.  Considering the testimony of a vocational expert, the ALJ concluded that while Mr. Smith would be unable to perform his past relevant work, there were still other jobs that exist in significant numbers in the national economy that he could perform and that he was therefore not disabled.  *Id.* at 23-24.

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole.  *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite

conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Mr. Smith argues that the record lacks substantial evidence to support the ALJ's step three finding that his substance use disorder is a material factor to his status of disability. [R. 15-1 at 3.] Specifically, Mr. Smith argues that no evidence is present which demonstrates that, in periods of sobriety, the effects of Mr. Smith's remaining mental disorders are lessened. *Id.* at 5. Instead, Mr. Smith asserts that the record shows that his alcohol use is "inextricably intertwined" with his mental impairments and that the ALJ failed to explain her conclusion that his mental impairments would be "resolved" in the absence of his substance use. *Id.* at 14.

In response, the Commissioner argues that the ALJ's conclusion regarding the materiality of Mr. Smith's alcohol use on his remaining disabilities was both reasonable and proper, as the record demonstrates that Mr. Smith's intermittent thoughts of self-harm became more severe in the presence of alcohol. [R. 17 at 4.] Furthermore, the Commissioner asserts that, consistent with the ALJ's conclusions, the record reflects that Mr. Smith's depression was "a little more stable" during periods of sobriety and that Mr. Smith felt better, was more active, and was more social during times of sobriety. *Id.* (quoting Tr. 41-42). The Commissioner also disputes Mr. Smith's assertion that the ALJ failed to explain her conclusion that Mr. Smith's mental impairments would resolve if he stopped using alcohol. Instead, the Commissioner argues that the ALJ indicated that, although Mr. Smith's mental impairments would still remain in the absence of substance abuse, his impairments would no longer be so severe as to render him disabled under the Paragraph B criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1. [*See* Tr. 20-21.]

The Court agrees with the Commissioner.  Upon examination of the record, it is evident that, initially, the ALJ determined that Mr. Smith had marked limitations in concentrating, persisting, or maintaining pace, and in adapting or managing oneself.  *Id.* at 18-19.  When labeled marked limitations, Mr. Smith satisfied the Paragraph B criteria to be deemed disabled. *See id.* at 19.  However, because the ALJ also found Mr. Smith to have a substance use disorder at step two, she was required to assess whether Mr. Smith's alcohol use was a material factor to the determination of his disability.  *Id.* at 20.  Upon reexamination, the ALJ determined that Mr. Smith's two previously "marked" limitations would instead become only "moderate" limitations if he were to cease alcohol use.[2]  This decrease in limitation status resulted in Mr. Smith no longer qualifying as disabled.  *Id.*

In support of her initial assessment that Mr. Smith had a "marked" limitation in concentrating, persisting, or maintaining pace, the ALJ noted that Mr. Smith had diminished concentration, decreased energy, and recurrent thoughts of death.  *See id.* at 834, 836, 841, 1352. In support of her initial assessment that Mr. Smith had a "marked" limitation in adapting or managing himself, the ALJ noted that Mr. Smith reported a lack of motivation and a desire on some days to not leave his bed or house.  *See id.* at 531, 549-50, 558, 826, 828.  However, the ALJ indicated that these limitations were exacerbated by Mr. Smith's alcohol use.  *Id.*  She further noted that Mr. Smith was admitted to the hospital with suicidal ideations following a period of heavy drinking.  *Id.* at 586.

When assessing Mr. Smith's limitations in the absence of alcohol use, the ALJ conducted a review of the record and found that Mr. Smith would have only a moderate limitation in

---

[2]     During periods in which Mr. Smith's alcohol use was limited, the ALJ found that his limitations degraded from "marked" to "moderate," altering his disabled status.

concentrating, persisting, and maintaining pace. *Id.* at 20.  In support of this position, she noted that, while Mr. Smith undoubtedly still had difficulty concentrating or paying attention, he also attested that he was capable of watching television, reading, occasionally doing household chores, and playing video games. *See id.* at 49, 57, 264, 266, 285, 287, 289.  As for adapting or managing himself, the ALJ found that Mr. Smith had a moderate limitation. *Id.* at 20-21.  While Mr. Smith continued to have thoughts of self-harm when abstaining from alcohol use, the ALJ noted that alcohol use appeared to enflame those thoughts. *See id.* at 41-42, 586.  Furthermore, the ALJ found Mr. Smith's limitation to be moderate because he can care for himself and taking care of household chores. *Id.* at 49, 247, 287-88.

Ultimately, because Mr. Smith's record includes both periods of frequent alcohol use and periods of sobriety, the ALJ was able to contrast Mr. Smith's self-assessments and medical records from both periods against one another.  Upon doing so, she concluded that Mr. Smith's substance use was a material factor to his disability determination.  Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek,* 139 S. Ct. at 1149 (2019).  Though the Court is sympathetic to Mr. Smith's plight, the Court find that the ALJ sufficiently explained her decision-making and did not commit reversable error.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Dean A. Smith's Motion for Summary Judgment **[R. 15-1]** is **DENIED**, but the Commissioner's Motion for Summary Judgment **[R. 17]** is **GRANTED**.  Judgment in favor of the Commissioner will be entered promptly.

This the 23d day of August, 2021.

Gregory F. Van Tatenhove
United States District Judge